# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILENA GARCIA, individually and on behalf of all current and former employees of TASK VENTURES, dba SPORT CLIPS, PINNACLE PEO CORPORATION and SPORT CLIPS HAIRCUT FRANCHISEES in the State of California,<br><br>Plaintiff,<br><br>v.<br><br>TASK VENTURES, LLC dba SPORTS CLIPS, *et al.*,<br><br>Defendants. | Case No. 16-cv-809-BAS(JLB)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>[ECF No. 6] |

On May 24, 2013, Plaintiff Milena Garcia commenced this wage-and-hour class action in San Diego Superior Court against Defendants Task Ventures, LLC d/b/a Sports Clips, Terry Klinker, and Pinnacle PEO Corporation ("Pinnacle"). In July 2014, Ms. Garcia filed an amended complaint to add Sports Clips, Inc. as a defendant, and then in January 2016, Ms. Garcia filed a Second Amended Complaint ("SAC"), the operative complaint, to add Albert Martinez as a defendant. Mr. Martinez subsequently removed this action to federal court. Ms. Garcia now moves

to remand this action to state court. Mr. Martinez opposes.

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Ms. Garcia's motion to remand.

## I.    BACKGROUND[1]

Ms. Garcia is a resident of San Diego, California and worked as a non-exempt employee of Task Ventures and Pinnacle in San Diego from June 2011 to October 2012. (SAC ¶¶ 13, 25.) Mr. Klinker is the owner, president, and manager of Task Ventures. (SAC ¶ 17.) And Mr. Martinez is the owner and CEO of Pinnacle. (SAC ¶ 18.) Ms. Garcia brings this class action on behalf of all current or former employees of Pinnacle and/or Task Ventures who work or have worked as hair stylists in the State of California since May 24, 2009. (SAC ¶¶ 83-87.)

Hair stylists are non-exempt employees eligible for minimum wages, overtime wages, meal and rest breaks, and other protections of the California Labor Code and Wage Order of the Industrial Welfare Commissions ("IWC Wage Order"). (SAC ¶ 26.) It is alleged that Defendants failed to provide Ms. Garcia and its hair stylists the required benefits and protections of California wage-and-hour laws. (SAC ¶ 27.) These failures include, among other things, Defendants not paying its employees the proper rate of pay for overtime hours, providing adequate meal periods, timely paying overtime wages, and maintaining accurate itemized wage statements. (SAC ¶¶ 33-43, 45-52, 96-101, 109-12, 115, 123-27

On May 24, 2013, Ms. Garcia commenced this action against Task Ventures, Mr. Klinker, and Pinnacle in the San Diego Superior Court. (Roysdon Decl. Ex. 1.) A First Amended Complaint was then filed on July 7, 2014, making "no change[s]

---

[1] For the purposes of this order, the Court collectively refers to Task Ventures, Pinnacle, Mr. Klinker, and Mr. Martinez as "Defendants."

to [Ms. Garcia's] substantive allegations, other than adding a cause of action against Sport Clips." (*Id.* ¶ 7, Ex. 2.)

In April 2015, the parties attempted to resolve this action in mediation, which was ultimately unsuccessful. (Roysdon Decl. ¶ 8; McCarter Decl. ¶¶ 15-16.) Though the circumstances that produced an unsuccessful mediation are disputed, Ms. Garcia eventually dismissed Sport Clips as a defendant. (Roysdon Decl. ¶ 8.)

After obtaining leave from the court, Ms. Garcia filed her SAC on February 8, 2016, "which added Defendant Martinez as a defendant to the PAGA representative claim and did not change Plaintiff's substantive allegations, other than to delete the cause of action against Sport Clips." (Roysdon Decl. ¶ 9.) According to Ms. Garcia, Mr. Martinez, the owner and CEO of Pinnacle, "has controlled Pinnacle's involvement in this litigation at all times, by, for example, assisting Pinnacle with preparing its discovery responses and requiring that Pinnacle obtain his approval before making any substantial discovery decisions." (*Id.* ¶ 12.) To support that assertion, Mr. Garcia submits an excerpt from Pinnacle's interrogatory responses that unequivocally identify Mr. Martinez as a "Responding Party." (*Id.* ¶ 12, Ex. 3.) Despite Pinnacle's involvement in this action from the very beginning, it has not sought removal at any point. (*Id.* ¶ 11.)

On February 8, 2016, Ms. Garcia filed her SAC, asserting ten causes of action for: (1) failure to pay overtime wages; (2) failure to provide compliant meal periods; (3) failure to authorize and permit rest periods; (4) failure to timely pay all wages due during employment and upon separation of employment; (5) failure to provide accurate itemized wage statements; (6) failure to reimburse all expenses incurred; (7) representative claims under PAGA; (8) violation of California Business & Professions Code § 17200 *et seq.*; (9) wrongful termination in violation of public policy; and (10) unlawful retaliation. Specifically, Plaintiff asserts the first eight causes of action on behalf of all class members and the California Labor and Workforce Development Agency ("LDWA"). (SAC ¶¶ 182-87.) In an individual

capacity, Ms. Garcia asserts that Defendants wrongfully terminated her in violation of public policy and unlawfully retaliated against her for complaining about unsafe working conditions. (SAC ¶¶ 192-200, 209-14.)

In the notice of removal, Mr. Martinez asserts the basis for removal is diversity jurisdiction under 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA"). (Removal Notice ¶ 9.) Ms. Garcia now moves to remand based on, among other things, a CAFA exception known as the "local controversy exception," which mandates federal courts to decline jurisdiction if certain conditions are met in cases that are truly local in nature. *See* 28 U.S.C. § 1332(d)(4). Mr. Martinez opposes.

## II.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution or a statute, which is not to be expanded by judicial decree." *Id.* (internal citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted); *see also Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006).

Consistent with the limited jurisdiction of federal courts, the removal statute is strictly construed against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *see also Sygenta Crop Prot. v. Henson*, 537 U.S. 28, 32 (2002); *O'Halloran v. Univ. of Wash.*, 856 F.2d 1375, 1380 (9th Cir. 1988). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus*, 980 F.2d at 566; *see also Nishimoto v. Federman-Bachrach & Assoc.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990); *O'Halloran*, 856 F.2d at 1380. "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566.

//

CAFA confers federal jurisdiction over class actions involving: (a) minimal diversity; (b) at least 100 putative class members; and (c) at least $5 million in controversy, inclusive of attorneys' fees but exclusive of interest and costs. 28 U.S.C. §§ 1223(d)(2), (5). CAFA maintains the historical rule that places the burden on the removing party to establish a *prima facie* case of removal jurisdiction. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020 (9th Cir. 2007) (citing *Abrego*, 443 F.3d at 684-85). However, when a plaintiff moving to remand seeks to rely on a statutory exception to CAFA, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the exception applies. *Serrano*, 478 F.3d at 1022.

## III. DISCUSSION

CAFA's local-controversy exception is intended to identify a controversy that "uniquely affects a particular locality and to ensure that it is decided by a state rather than a federal court." *Bridewell-Sledge v. Blue Cross of Cal.*, 789 F.3d 923, 928 (9th Cir. 2015) (quoting *Evans*, 449 F.3d at 1163-64)). CAFA's language favors federal jurisdiction over class actions, and its legislative history suggests that Congress intended the local-controversy exception to be a narrow one. *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1116 (9th Cir. 2015) (citing *Evans v. Walter Indus. Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006)).

Under CAFA's local-controversy exception, a district court must decline to exercise jurisdiction if the following conditions are satisfied: (1) greater than two-thirds of the proposed class members are citizens of the State in which the action was originally filed; (2) at least one defendant is a defendant from whom significant relief is sought by the proposed class members, whose alleged conduct forms a significant basis for the claims asserted by the proposed class members, and who is a citizen of the State in which the action was originally filed; (3) the principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and (4) no similar class action has

been filed against any of the defendants in the preceding three years. 28 U.S.C. § 1332(d)(4)(A)(i)-(ii). The last two conditions are not disputed by Mr. Martinez.

The plaintiff bears the burden of showing by a preponderance of the evidence that the local-controversy exception applies to the facts of a given case. *Mondragon v. Capital One Auto Finance*, 736 F.3d 880, 883 (9th Cir. 2013); *Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010, 1013 (9th Cir. 2011); *Serrano*, 478 F.3d at 1019. But the burden of proof placed upon a plaintiff should not be exceptionally difficult to bear, and district courts are permitted to make reasonable inferences from facts in evidence in applying CAFA's local-controversy exception. *Mondragon*, 736 F.3d at 886. In this instance, Ms. Garcia must establish (1) that greater than two-thirds of the proposed class members are citizens of California; and (2) at least one defendant is a citizen of California from whom the members of the plaintiff class seek significant relief and whose conduct forms a significant basis for the claims asserted in the SAC. *See* 28 U.S.C. § 1332(d)(4)(A)(i)(I)-(II).

Based on the following reasons, the Court finds that Ms. Garcia satisfies her burden in establishing that the local-controversy exception applies to this case.

### A. Class Member Citizenship

To avail herself of the local-controversy exception, Ms. Garcia must prove that greater than two-thirds of the putative class members are California citizens. *See* 28 U.S.C. § 1332(d)(4)(A)(i). The citizenship of the class is a question of fact and may be established through evidence beyond the complaint. *Coleman*, 631 F.3d at 1015. Though plaintiffs may submit evidence for the court's consideration, they are not required to submit multiple points of data probative of citizenship for each potential class member, but rather plaintiffs "may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Mondragon*, 736 F.3d at 886. That said, a plaintiff may also not simply rely on her own allegations that

greater than two-thirds of the plaintiff class are citizens of California to satisfy the burden. *Id.* at 884 ("The statute does not say that remand can be based simply on a plaintiff's allegations [regarding citizenship] when they are challenged by the defendant," and "[a] complete lack of evidence does not satisfy the [preponderance of the evidence] standard.").

The Ninth Circuit has also observed that numerous courts treat a person's residence as *prima facie* evidence of the person's domicile. *Mondragon*, 736 F.3d at 886 (citations omitted). The court in *Mondragon* admonished that there "must ordinarily be at least some facts in evidence from which the district court may make findings regarding class members' citizenship for purposes of CAFA's local controversy exception," and explained that a "court should consider 'the entire record' to determine whether evidence of residency can properly establish citizenship." *Id.* at 884, 886 (citing *Preston v. Tenet Healthsystem Mem'l Med. Ctr. Inc.*, 485 F.3d 793, 800 (5th Cir. 2007)).

Ms. Garcia presents evidence pertaining to a 17.2% sample of the total putative class. (Pl.'s Mot. 19.) According to Ms. Garcia, Pinnacle only provided access to such information for an 18% random sample of the putative class, or about 461 class members. (Roysdon Decl. ¶ 14.) Of those 461 class members, 439 consented to the release of their names and contact information. (*Id.* ¶ 15.) Out of the 439 putative class members' information provided, 97% have mailing addresses in California. (*Id.* ¶ 16, Ex. 4.) Relying on the assumption that the mailing addresses of the employees serve as a proxy for their citizenship, Ms. Garcia argues that it can be reasonably inferred from the evidence that greater than two-thirds of the total class are citizens of California. The Court agrees. From the sampling method used by Ms. Garcia, the Court concludes that she satisfies the two-thirds class-citizenship threshold.

//
//
//

Ms. Garcia's position is further supported by allegations in the SAC. Other district courts have found that if a complaint asserts that a case is brought only on behalf of California plaintiffs, the presumption that greater than two-thirds of the class are California citizens arises. *See Flores v. Chevron Corp.*, No. 2:11-cv-02551-JHN-FMOx, 2011 WL 2160420, at *4 (C.D. Cal. May 31, 2011); *Quesada v. Herb Thyme Farms, Inc.*, No. CV 11-00016 ODW(SSx), 2011 WL 1195952, at *4 (C.D. Cal. Mar. 28, 2011); *Rotenberg v. Brain Research Labs, LLC*, No. C-09-2914 SC, 2009 WL 2984722, at *3 (N.D. Cal. Sept. 15, 2009). It appears the only relevant places of employment for the potential class members are in California, as all claims invoke only California law and the class is limited to "[a]ll current and former employees [of Defendants] *in the state of California*." (SAC ¶¶ 87-92 (emphasis added).) While the class definitions could have been clearer, the most reasonable reading of the complaint is that Ms. Garcia, by including "in the state of California" in all five class definitions, intended to limit the claims to California plaintiffs. (SAC ¶¶ 87-92). In the absence of contrary evidence, it is reasonable to infer that greater than two-thirds of the putative class members live and intend to remain in California.

In his opposition, Mr. Martinez fails to provide any evidence rebutting Ms. Garcia's reasonable inference that she satisfies the two-thirds class-citizenship threshold based on her sampling method. Instead, Mr. Martinez attacks Ms. Garcia's definition of citizenship, specifically that she conflates "citizenship" with "residence." (Def.'s Opp'n 22.) However, that attack lacks merit because numerous courts have treated a person's residence as *prima facie* evidence of citizenship. *Mondragon*, 736 F.3d at 886.

Relying on *Mondragon* and *Hart v. Rick's NY Cabaret International, Inc.*, 967 F. Supp. 2d 955 (S.D.N.Y. 2014), Mr. Martinez also argues that Ms. Garcia offers evidence of where the class members resided four years ago, but fails to provide any evidence of where the class members resided at the time of removal. (Def.'s Opp'n 22-23.) However, plaintiffs "may rely on the presumption of continuing domicile,

which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Mondragon*, 736 F.3d at 886. This presumption has been widely accepted, including by the Ninth Circuit. *See Mondragon*, 736 F.3d at 885-86 (citing *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986); *Anderson v. Watts*, 138 U.S. 694, 706 (1891); *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011) (per curiam)). Despite having possession of relevant information pertaining to the putative class members' residences, Mr. Martinez has not offered any such evidence.

Thus, Mr. Martinez's reliance on *Hart* is misplaced. In *Hart*, the defendant provided specific examples of class members who had left New York since the relevant time period. 967 F. Supp. 2d. at 964-65. Here, Mr. Martinez merely suggests the possibility that employees either left California or never resided there to begin with, but fails to produce any evidence to actually support that suggestion. (*See* Def.'s Opp'n 22.) That suggestion is tantamount to pure speculation, which is wholly inadequate to rebut the presumption regarding the class' citizenship. Thus, the putative class members who had residential addresses in California four years ago are presumed to have continued to be domiciled in California. *Mondragon*, 736 F.3d at 885-86.

Consequently, Ms. Garcia successfully demonstrates by a preponderance of the evidence that greater than two-thirds of the putative class members are citizens of California. *See* 28 U.S.C. § 1332(d)(4)(A)(i).

### B. Significant-Defendant Requirement

The local-controversy exception also requires that at least one defendant be a citizen of the state where the action was originally filed. 28 U.S.C. § 1332(d)(4)(A)(II)(cc). The local defendant must be a defendant "from whom significant relief is sought by members of the plaintiff class" and "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff

class." 28 U.S.C. § 1332(d)(4)(A)(II)(aa)-(bb). In deciding whether "significant relief is sought" from a defendant who is a citizen of the state in which the suit is filed and whether the defendant's "alleged conduct forms a significant basis for the claims asserted by the plaintiff class," the district court may look only to the complaint. *Coleman*, 631 F.3d at 1015.

For purposes of diversity jurisdiction, a limited liability company is a citizen of every state of which its members are citizens. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

### 1.     Task Ventures' Citizenship

Ms. Garcia asserts that Task Ventures, a limited liability company, holds California citizenship because its only two members, Terry Klinker and his wife, Susan Klinker, have lived in San Diego since 2000 and there is no evidence that they are no longer citizens of California. (Roysdon Decl. ¶¶ 17-18, Exs. 5-6.) Mr. Martinez responds, arguing that Ms. Garcia failed to show that Terry Klinker was a citizen of California at the time of removal. (Def.'s Opp'n 25.) In support of his argument, Mr. Martinez directs the Court to a March 2015 email from Terry Klinker to Pinnacle's payroll coordinator asking her to send all future correspondence to their new address in Georgia. (*Id.*; McCarter Decl. ¶ 17, Ex. B.) However, given the undisputed fact that the Klinkers were California citizens for nearly 15 years prior to Terry Klinker informing Pinnacle of his new address in Georgia, the Court finds that Mr. Martinez's evidence, without more, is insufficient to establish Terry Klinker is no longer a citizen of California or intends to remain in Georgia. For example, Mr. Martinez offered no evidence the Klinker sold their home in San Diego or that intend to remain in Georgia indefinitely. *See, e.g., Lew v. Moss*, 797 F.2d 747, 752 (9th Cir. 1986).

Further supporting the argument that Task Ventures is a California citizen is the fact that Task Ventures is organized under the laws of California with its principle place of business being California. (SAC ¶ 14.) Therefore, Ms. Garcia meets her

burden to demonstrate that Task Ventures is also a citizen of California. *See* 28 U.S.C. § 1332(d)(4)(A)(II)(cc).

### 2.  Significant Basis for Ms. Garcia's Claims

In determining whether Task Ventures' alleged conduct forms a "significant basis" for Ms. Garcia's claims, this Court may only look to the allegations in the SAC and may not consider extrinsic evidence for purposes of the local-controversy exception. *Coleman*, 627 F.3d at 1015. Whether the "significant basis" condition is met requires a "substantive analysis comparing the local defendant's alleged conduct to the alleged conduct of all the other, non-local defendants." *Benko*, 789 F.3d at 1118 (quoting *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 156 (3d Cir. 2009)). In the SAC, Ms. Garcia alleges that Task Ventures engaged in the exact same wage-and-hour violations as the other defendants. The SAC further alleges that Task Ventures employed members of the plaintiff class during the relevant period and violated California law in a number of ways previously mentioned with respect to those employees. Furthermore, Ms. Garcia seeks damages equally from all defendants. These allegations sufficiently satisfy the "significant basis" requirement. *See* 28 U.S.C. § 1332(d)(4)(A)(II)(bb).

Likewise, whether Ms. Garcia seeks "significant relief" from Task Ventures also requires a comparison of the relief sought from Task Ventures to the relief sought from the other, non-local defendants. *Benko*, 789 F.3d at 1119. A "defendant from whom significant relief is sought" does not mean a "defendant from whom significant relief may be obtained." *Coleman*, 631 F.3d at 1015 (citing *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1245 (10th Cir. 2009)). "[N]othing in CAFA's language indicates Congress intended district courts to wade into the factual swamp of assessing the financial viability of a defendant as part of a preliminary consideration." *Id.* In *Coleman*, the plaintiffs alleged that both the in-state defendant and the out-of-state defendant violated California law and sought damages equally

from both. 631 F.3d at 1013, 1020. The court found those allegations sufficient to satisfy the "significant relief" requirement from the in-state defendant. *Id.* at 1020. Additionally, in *Benko*, the court held that claims for general damages, punitive damages, and equitable relief were sufficient to show that the plaintiffs claim "significant relief" from the in-state defendant. 789 F.3d at 1119.

Considering the allegations in the SAC, Ms. Garcia sufficiently alleges that members of the class have suffered harm as a result Defendants' violations of the California Labor Code and IWC Wage Order. *See Coleman*, 627 F.3d at 1015. While Ms. Garcia did not quantify the alleged damages, she seeks damages from all defendants equally for their alleged wrongful conduct.[2] These damages appear to be the same whether caused by Task Ventures or another defendant. While Task Ventures' employees may constitute a smaller percentage of the total class, nothing on the face of the SAC suggests Task Ventures is a nominal defendant or that relief from Task Ventures would be insignificant.[3]

Furthermore, the SAC seeks injunctive relief and restitution against Task Ventures. (SAC ¶¶ 197(g)-(h).) There is nothing in the SAC to suggest either that the injunctive relief and/or restitution is itself insignificant, or that Task Ventures would be incapable of complying with an injunction or restitution order.

Therefore, Ms. Garcia also carries her burden with respect to the "significant relief" requirement to the local-controversy exception to CAFA. *See* 28 U.S.C. § 1332(d)(4)(A)(II)(aa).

---

[2] In the SAC, Ms. Garcia specifically seeks relief against all defendants for general damages, special damages, actual damages pursuant to Labor Code § 226(e), liquidated damages in an amount equal to the wages unlawfully paid and interest thereon, reasonable attorney's fees, statutory and civil penalties, injunctive relief, restitution, among other things. (*See* SAC ¶¶ 197(a)-(r).)

[3] The Court declines to consider evidence of Task Ventures' financial problems for two reasons: (1) the Court must only rely on the face of the SAC; and (2) evidence of Task Ventures' financial condition is irrelevant to determining whether it is a defendant from whom significant relief is sought. *See Coleman*, 631 F.3d 1015 (stating that a "defendant from whom significant relief is sought" does not mean a "defendant from whom significant relief may be obtained.").

## IV. CONCLUSION & ORDER

In light of the foregoing, the Court finds that the local-controversy exception to CAFA applies to this case.[4] *See* 28 U.S.C. § 1332(d)(4); *see also Benko*, 789 F.3d at 1116 ("If the statutory conditions for the application of [CAFA's] local controversy exception are met, a district court is required to remand the class action back to the originating state court."). Accordingly, the Court **GRANTS** Ms. Garcia's motion to remand, and **REMANDS** this action to the San Diego Superior Court.

**IT IS SO ORDERED.**

DATED: December 6, 2016

Hon. Cynthia Bashant
United States District Judge

---

[4] Because the Court finds that the local controversy exception applies to the facts of this case, it need not address Ms. Garcia's other arguments that removal was improper, removal was untimely, or that the amount in controversy did not exceed $5 million.